IN THE MATTER OF PETITION FOR ADMISSION TO BAR OF KALAMARAS.

[No. 29,065. Filed October 15, 1953.]

*Campbell, Livingston, Teeple & Dildine,* of Fort Wayne, for petitioner.

DRAPER, J.—This matter reaches us by way of a paper denominated a "formal request" for admission of one Louis Basil Kalamaras, now known as Louis Basil Calamaras, to the bar of this state. He is hereinafter referred to as the petitioner.

The formal request is dated March 7, 1953. It was addressed and delivered to the State board of Law Examiners. It was considered and denied by the Board, whereupon the petitioner filed his petition in this court requesting us to review the decision of the Board pursuant to the provisions of Rule 3-13a of this court.

Rule 3-13a provides for a review of the refusal of the Board of Law Examiners to recommend the admission or reinstatement of an applicant to practice law in this state under Rules 3-5, 3-8 and 3-12. Rule 3-5 has to do with admissions on foreign license; Rule 3-8 has to do with reinstatement; and Rule 3-12 has

to do with decisions of the Board involving an applicant's character and fitness.

Under §4-3605, Burns' Stat., 1953 Supp.,[1] and under Rule 3-2 of this court,[2] this court has exclusive jurisdiction to admit attorneys to practice law in this state. Rules governing the admission of attorneys to practice have been prescribed by this court and are now in full force and effect. Rule 3-1, *et seq.* Our rules make no provision for a review of the decision of the Board in the instant case. The situation presented here is of such an unusual character that no necessity for the adoption of a rule providing for review by this court in such a case could well have been foreseen. The situation which confronts us is new, unusual, and entirely unlike one which involves the grading of examination papers, where final authority rests with the Board. The determination of the question presented is an affair of responsibility, not rules. It is the duty of this court to review the action of the Board in this case, and we therefore proceed to a determination of the question.

Various documents are attached to and in support of the formal request above mentioned. The petitioner makes affidavit that he took the bar examination held in July 1935 and was later notified that he had passed the examination and should appear on September 10, 1935, for the purpose of being admitted and receiving

1. "The Supreme Court of this state shall have exclusive jurisdiction to admit attorneys to practice law in all courts of the state and exclusive jurisdiction to issue restraining orders and injunctions in all cases involving the unauthorized practice of the law under such rules and regulations as it may prescribe."

2. "This court shall have exclusive jurisdiction to admit attorneys to practice law in this state. Admission by this court shall entitle attorneys to practice in any of the courts of this state. Any member of the bar of another state in good standing may be permitted, as a matter of courtesy, to appear as such in the courts of this state."

his certificate; that following the receipt of that notice he received a letter from the Secretary of the Board questioning his status as a *bona fide* resident of the state of Indiana, but his financial status was such that it was impossible for him to travel from South Bend to Indianapolis to clarify the record; that he did attempt to do so the next year—1936—but the records of the Board were in such condition that the records of the case could not be found.

Other affidavits, letters and scholastic records were also filed in support of the petitioner's formal request, their purpose being to substantiate the assertion in the petitioner's affidavit above referred to. Since we have concluded that the petitioner's request for admission must be denied whatever the fact may be as to his having passed the examination in July 1935, we do not deem it necessary to resolve that question of fact or to refer it for resolution, and it follows that it is unnecessary to make particular references to the other papers filed in support of petitioner's claim.[3]

The practice of the law requires specialized knowledge. Applicants for admission to the bar of this state are examined for the purpose of ascertaining the extent and adequacy of their learning in the law, and appropriate inquiry is made to learn, as nearly as possible, whether or not the applicant is possessed of those requisites of good moral character necessary to qualify him to serve as an attorney. These precautions are almost universal. They are deemed necessary to assure, as near as may be, that only those mentally and morally

3. There is no record evidence that the petitioner passed the examination. No file or folder on this petitioner can be found and so none of the papers which should be found in the folders of the various applicants for admission, such as the application itself, the record of the committee on character and fitness, correspondence relative to the application, and the applicant's graded paper or papers, can be found.

qualified to practice law may hold themselves out as attorneys-at-law and receive and accept employment as such from the general public.

It seems self-evident that the privilege of being admitted upon passing the prescribed examination and receiving the approval of the committee on character and fitness must bear some reasonable relationship to the time when such examination is taken and passed and the approval of the committee on character and fitness is extended. It would seem to require no argument to sustain the proposition that one who is mentally qualified to practice law in 1935 might not be qualified to do so eighteen years later, and one whose character and fitness could not be challenged in 1935 might well be vulnerable in that regard in 1953.

Our rules do not prescribe the time within which one who has passed all the tests and met all requirements for admission to the bar must take the oath and be enrolled as an attorney-at-law, but certainly such must be done within a reasonable time. It may well be that the petitioner's intellectual aptitude and moral worth have not suffered in the considerable period of time that has elapsed. He may now be eminently qualified in all respects for admission to the bar of this state. But this should be determined by an examination and investigation which is reasonably relevant in point of time to the date of admission. The time may vary with the circumstances but it must be reasonable under the circumstances.

In our opinion the petitioner is not now in a position to assert any right to be enrolled as an attorney-at-law in this state. His request is stale. It comes too late. On the record before us the delay with which the petitioner is chargeable has prejudiced

his right to be admitted now even though he did pass the examination and meet all other requirements eighteen years ago.

The petitioner's application pursuant to which he took the July 1935 bar examination was filed June 10, 1935. It was dismissed by this court on April 19, 1937, "subject to reinstatement under proper showing." That order still stands. If reinstated, the application will be processed in the usual manner.

We hold that the decision of the State Board of Law Examiners was right, and it is hereby approved and confirmed.

Emmert, J., concurs in result.

Bobbitt, C. J. and Gilkison, J. not participating.

NOTE.—Reported in 114 N. E. 2d 768.

## CONCURRING OPINION

EMMERT, J.—I concur in the result that we should deny the prayer of the petitioner to be admitted to practice law in this state. As I understand this record, he has not submitted any written memorial or record which would justify any court in changing its record, *nunc pro tunc*, after the term in which the judgment was entered. *Witte* v. *State* (1950), 228 Ind. 153, 90 N. E. 2d 802.

But I do not believe that an applicant for admission to the bar should have his right prejudiced to practice law if he can establish by satisfactory evidence that he in fact did pass the bar examination. If the State Board is in doubt about his moral character and fitness, it should cause a reexamination to be had on that qualification. Nor do I believe that mere lapse of time of itself shows professional incompetency to engage in the practice. Many eminent practicing lawyers

might fail the bar examination which they could have easily passed shortly after completing their scholastic training. We have not adopted any rule that once a lawyer has passed the bar examination, he must thereafter engage in the practice or he loses the right by not practicing for a considerable period of time.

It has been my experience on this count that it has been our practice to make an order *nunc pro tunc,* or *in praesenti,* admitting lawyers to practice when they submitted written memorials sufficient to justify a court record entry *nunc pro tunc.*

NOTE.—Reported in 114 N. E. 2d 768.